AMBER N. CHILBERG, Respondent-Appellant, v MARK A. CHILBERG et al., Appellants-Respondents. (Appeal No. 1.) [788 NYS2d 533]—

Appeals and cross appeal from a judgment of the Supreme Court, Niagara County (Richard C. Kloch, Sr., A.J.), entered August 6, 2003, in an action to recover damages for personal injuries. The judgment was entered, upon a jury verdict, in favor of plaintiff and against defendants.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously modified on the law by denying plaintiff's motion in part and as modified the judgment is affirmed without costs, and a new trial is granted on the issues of plaintiff's alleged culpable conduct and the causal relationship, if any, between such conduct and the accident in accordance with the following memorandum: Plaintiff, who was then 15 years old, was sunbathing in the driveway of her family's home when she was accidently run over by a pickup truck driven by her father, defendant Mark A. Chilberg, and owned by defendants Ford Motor Credit Company and Ford Credit Titling

Trust Company (collectively, Ford). Just before trial, plaintiff moved for partial summary judgment on liability, contending that the negligence of her father was the sole proximate cause of the accident. Defendants opposed the motion, contending that there were triable issues of fact with regard to plaintiff's culpable conduct and causation. Supreme Court granted plaintiff's motion, thereby determining as a matter of law that there was no culpable conduct on the part of plaintiff. Following a trial on damages only, judgment was entered awarding plaintiff the principal sum of $800,000. The appeals by defendants from the judgment bring up for review their challenge to the order granting plaintiff's motion for partial summary judgment on liability (see CPLR 5501 [a] [1]).

We conclude that the court properly granted that part of the motion of plaintiff with respect to the issue of her father's negligence. We further conclude, however, that the court erred in granting that part of the motion of plaintiff seeking partial summary judgment with respect to the issues of her alleged culpable conduct and the causal relationship, if any, between any such conduct and the accident. As a general proposition, summary judgment should not be granted "where there is any doubt as to the existence of factual issues . . . or where the issue is arguable" (Onondaga Soil Testing v Barton, Brown, Clyde & Loguidice, 69 AD2d 984, 985 [1979]; see Gateway Dev. & Mfg. v Commercial Carriers, 296 AD2d 821, 825 [2002]). Negligence actions do not ordinarily lend themselves to summary disposition because, even if the parties agree on the facts, there nevertheless may be a question of fact concerning the reasonableness of the parties' conduct (see Ugarriza v Schmieder, 46 NY2d 471, 475 [1979]). Thus, the plaintiff in a negligence action "will generally be entitled to summary judgment 'only in cases in which there is no conflict at all in the evidence, the defendant's conduct fell far below any permissible standard of due care, and the plaintiff's conduct either was not really involved (such as with a passenger) or was clearly of exemplary prudence in the circumstances' " (Andre v Pomeroy, 35 NY2d 361, 365 [1974]; see Ugarriza, 46 NY2d at 475-476; Pittman v Rickard, 295 AD2d 1003 [2002]).

In our view, it is not possible to conclude on this record that plaintiff's conduct " 'either was not really involved . . . or was clearly of exemplary prudence' " under the circumstances (Andre, 35 NY2d at 365). We thus conclude that plaintiff failed to sustain her burden of demonstrating her entitlement to judgment as a matter of law on the issues of her culpable conduct and causation (see Valore v McIntosh, 8 AD3d 662 [2004]; Mil-

*lus v Milford*, 289 AD2d 543, 543-544 [2001]; *King v Washburn*, 273 AD2d 725, 726 [2000]). Our conclusion compels denial of that part of plaintiff's motion, irrespective of the sufficiency of defendants' opposing papers (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). We therefore modify the judgment by denying plaintiff's motion in part, and we grant a new trial on the issues of plaintiff's alleged culpable conduct and its causal role in the accident. In the event that upon the new trial it is found that plaintiff was comparatively negligent and that there is a causal relationship between her negligence and the accident, the judgment must be further modified by reducing the amount of damages to which plaintiff is entitled based on her percentage of culpability.

We further conclude that the awards of $650,000 for past pain and suffering and $100,000 for future pain and suffering do not "deviate[ ] materially from what would be reasonable compensation" (CPLR 5501 [c]; *see generally Denio v State of New York*, 11 AD3d 914 [2004]; *Swedowski v Ethicon, Inc.*, 6 AD3d 1198, 1199 [2004]).

Contrary to the contention of Ford, we conclude that Vehicle and Traffic Law § 388 is not unconstitutional as applied to long-term vehicle lessors. The statute provides for vicarious liability on the part of "[e]very owner of a vehicle used or operated in this state . . . with the permission, express or implied, of such owner" (§ 388 [1]). Section 388 (3) provides that the term "owner" is defined as in Vehicle and Traffic Law § 128, i.e., as a "person, other than a lien holder, having the property in or title to a vehicle."

Addressing first Ford's due process challenge, we note that, in the area of economic regulation, a statute need only bear a reasonable relationship to a valid governmental purpose in promoting the health, comfort, safety, welfare and morals of society in order to survive a due process challenge (*see Fred F. French Inv. Co. v City of New York*, 39 NY2d 587, 596 [1976], *rearg denied* 40 NY2d 846 [1976], *appeal dismissed and cert denied* 429 US 990 [1976]; *Montgomery v Daniels*, 38 NY2d 41, 54 [1975]; *Wegman's Food Mkts. v State of New York*, 76 AD2d 95, 98 [1980]). "There is generally a very strong presumption that the Legislature has investigated and found the existence of a situation showing or indicating the need for or desirability of the legislation" (*Montgomery*, 38 NY2d at 54 [internal quotation marks omitted]). Thus, one challenging an enactment on due process grounds must overcome a heavy presumption of constitutionality by proof beyond a reasonable doubt (*see*

*Marcus Assoc. v Town of Huntington*, 45 NY2d 501, 505 [1978]; *Lighthouse Shores v Town of Islip*, 41 NY2d 7, 11 [1976]).

One legislative purpose in enacting the statute was to ensure that persons injured by the negligent operation of a motor vehicle would have recourse to a financially responsible person (*see Morris v Snappy Car Rental*, 84 NY2d 21, 27 [1994]; *Continental Auto Lease Corp. v Campbell*, 19 NY2d 350, 352 [1967]; *see also Fried v Seippel*, 80 NY2d 32, 41 [1992]). "An equally important policy reflected in section 388 is the heightened degree of care owners are encouraged to exercise when selecting and supervising drivers permitted to operate their vehicles" (*Murdza v Zimmerman*, 99 NY2d 375, 379 [2003]). We reject Ford's contention that imposing liability on long-term lessors of motor vehicles for the negligence of long-term lessees is not a reasonable means of accomplishing those legislative objectives.

Addressing next Ford's equal protection challenge, we note that "[t]he basic guarantee of the Equal Protection Clause is that government will act evenhandedly in allocating the benefits and burdens prescribed by law and will not, without at least a rational basis, treat similarly situated persons differently or disparately (*see City of Cleburne v Cleburne Living Ctr.*, 473 US 432, 439 [1985]; *Plyler v Doe*, 457 US 202, 216 [1982])" (*Weaver v Town of Rush*, 1 AD3d 920, 921 [2003]). Thus, it is well established that social and economic legislation that neither classifies on the basis of a suspect class nor impairs a fundamental right must be upheld if the challenged classification—The disparity of treatment—is rationally related to the achievement of a legitimate state purpose (*see Trump v Chu*, 65 NY2d 20, 25 [1985], *appeal dismissed* 474 US 915 [1985], citing *Western & S. Ins. Co. v Board of Equalization*, 451 US 648, 657 [1981]; *see also Heller v Doe*, 509 US 312, 319-320 [1993]; *D'Amico v Crosson*, 93 NY2d 29, 31-32 [1999]). The Legislature need not have "actually articulate[d] at any time the purpose or rationale supporting its classification" (*Nordlinger v Hahn*, 505 US 1, 15 [1992]). Instead, a classification "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification" (*Federal Communications Commn. v Beach Communications*, 508 US 307, 313 [1993]; *see Heller*, 509 US at 320). The legislation is presumed to be constitutional, and Ford must overcome that strong presumption of constitutionality by proof beyond a reasonable doubt (*see Port Jefferson Health Care Facility v Wing*, 94 NY2d 284, 289 [1999], *cert denied* 530 US 1276 [2000]; *Maresca v Cuomo*, 64 NY2d 242, 250 [1984], *appeal dismissed* 474 US 802 [1985]).

In contending that, as applied, the statute at issue violates its constitutional rights, Ford effectively concedes that, as a long-term lessor of the vehicle, it is in fact an "owner" of it (*see generally Murdza*, 99 NY2d at 382; *Motor Veh. Acc. Indem. Corp. v Continental Natl. Am. Group Co.*, 35 NY2d 260, 263-264 [1974]). Ford nevertheless objects to the Legislature's treatment of it as an "owner," contending that it is irrational of the Legislature to draw a distinction between long-term lessors of vehicles on the one hand and lienholders on the other. We reject that contention. Rather, we conclude that it is rational for the Legislature to distinguish between vehicle owners, including long-term lessors, and nonowners, including lienholders, and to allocate the statutory burdens based on that distinction.

We have considered the parties' remaining contentions and conclude that they are without merit. Present—Hurlbutt, J.P., Scudder, Kehoe, Gorski and Martoche, JJ.